## Commonwealth v. Clark

*John H. Haugh, assistant district attorney,* for the Commonwealth.

*Thomas L. Kearney III,* for defendant.

UHLER, *J.,* June 11, 1993—Before the court is a variety of omnibus pre-trial motions filed on the behalf of the defendant and one motion filed on behalf of the Commonwealth. The court has not been afforded the benefit of briefs or legal memorandum in support of either of the parties' respective positions.

Initially, the court has been requested by the Commonwealth to direct the disclosure to it of the defendant Clark's confidential inculpatory communications made to health care providers who treated the defendant for HIV-related medical issues. As a general rule, no person who obtains "confidential HIV-related information" in the course of providing any "health or social service" can release that information except as authorized by the Act. The Act does not protect against disclosure of all HIV-related information, but rather information acquired and maintained as part of the provision of health or social services of HIV patients.

The term "health and social services" encompasses a broad spectrum. It includes but is not limited to health care, social work, case management, counseling, welfare counseling, insurance counseling, legal services, hotline crisis intervention, and other related services. The Act protects the privacy interests of almost any kind of information that links a person to an HIV test, HIV disease, any opportunistic infection of AIDS, or that could identify a person having some kind of HIV-related condition, including information about a person's sexual or needle sharing partners.

Title 35 P.S. §7608(a)(1) requires that before the court may authorize the disclosure of such information a compelling need must be demonstrated by the Commonwealth that the information sought cannot be accommodated by other means. The court is mandated under the Act to weigh the need for disclosure against the privacy interest of the individual and the public interest which may be harmed by the disclosure. We believe the "public interest" contemplated by the Act includes the free unimpeded exchange of information by the HIV-related patient to the health and social services provider regarding his or her sexual activities in order that follow-up public health issues may be addressed. See 35 P.S. §7602.

We have examined the record in the within criminal action, the transcripts of the preliminary hearing, the evidence offered at the pre-trial suppression hearing and such other matters as may appear as part of the file. Weighing the respective interests of privacy versus the public interest and the underlying purposes of the confidentiality cloak afforded the HIV communications of the patient to the "health and social services" providers and giving due consideration to the information heretofore available to the Commonwealth through the defendant's statements, we conclude that disclosure to the Commonwealth of

the confidential communications by the defendant to the York Health Corporation is unwarranted at this stage of the proceeding. Consequently, the Commonwealth's motion is denied. We note, however, that the within decision is without prejudice to reconsideration of the Commonwealth's request in the event the defendant effectively waives the cloak of confidentiality of his individual communications with the York Health Corporation as a result of his trial stratagem. Thus, if the defendant elects to use his health and service providers or the records therein as part of his defense, he may de facto waive his right to preserve the confidentiality. It is noted that the medical release originally executed by the defendant did not comply with the mandates of the confidentiality of HIV-related Act.

Defendant has sought through an amended omnibus pre-trial motion to suppress statements given by him on November 19, 1992, November 24, 1992, and December 8, 1992, to Detective Rohrbaugh of the York City Police. At the times of the arrest and the above interrogations the defendant was 30 years of age, with 13 years of education including one year of college studying criminal justice. The defendant advised that he is largely self-trained and has in past work history been employed as a law enforcement-security personnel for a judge. We find that the defendant was originally requested to go with the police officers to city hall after the initial complaint was received by them regarding suspected sexual abuse of the defendant's minor daughter and stepdaughter. The defendant acknowledged that he voluntarily accompanied the officers to the police station at approximately 12 noon to 12:30 p.m. in order to "straighten out" the allegations and that it was only after he sat for a protracted period in the detective bureau and was then accompanied to the bathroom that he sensed his freedom was impinged.

Nonetheless, the defendant concedes he was not questioned about the incident until the arrival of York City Detective, Scott Rohrbaugh. Detective Rohrbaugh advised he arrived at the police station at approximately 3:30 p.m. whereupon he secured the background regarding the allegations and commenced the interview with the defendant at about 3:50 p.m. Detective Rohrbaugh advised the defendant of his *Miranda* warnings on two separate occasions prior to questioning the defendant. The detective did not advise the subject that he was subject in a suspected attempted homicide case but rather the defendant was advised that he was a suspect in a case of aggravated sexual assault and involuntary deviate sexual intercourse. It was during the interview that the defendant confirmed to the police he was HIV positive, thereby reaffirming the information earlier provided to the police by the defendant's wife. The defendant was read the *Miranda* warnings and acknowledged that he understood the same. The defendant made statements which were tape recorded. The statements were not transcribed in order to afford the defendant the opportunity to sign the same at the time of recording. While the defendant suggests undue pressure or artifice was implemented by Detective Rohrbaugh this contention is not supported by the record of either Detective Rohrbaugh's or the defendant's testimony.

After the defendant made the above statements his arrest was formalized as to one of his daughters and he was committed to the York County Prison. On November 24, 1992, Detective Rohrbaugh appeared at the York County Prison seeking to further discuss the pending charges with the defendant. Again the defendant was advised of his *Miranda* warnings by Detective Rohrbaugh. Detective Rohrbaugh advised the court that the defendant again acknowledged he understood his

rights and initiated or solicited from the detective means by which he could exonerate himself including the taking of a lie detector or polygraph test. A factual dispute exists in that defendant contends that it was at this time he indicated to Detective Rohrbaugh his request for a public defender.

While we are not privy to the same, statements were made during the morning of November 24, 1992. Detective Rohrbaugh advised the court that the defendant was specifically advised by him that there was no obligation to take a polygraph test, that the results of the polygraph were inadmissible and that statements made by him may and would be used against him. Nonetheless, the defendant sought to take the polygraph test. Detective Rohrbaugh further advised that at no time did the defendant either request or indicate he desired an attorney.

In the afternoon of November 24, 1992, Detective Rohrbaugh accompanied by Assistant District Attorney John Haugh secured the removal of the defendant from the York County Prison for purposes of the administration of the polygraph test. Detective Rohrbaugh again administered the *Miranda* warnings at the West Manchester Township Police Department which the defendant acknowledged he understood. No questions pertinent to the investigation were propounded in the direct company of the assistant district attorney, who was not initially identified to the defendant. The defendant was again advised of his *Miranda* warnings by Detective A.D. Smith of the West Manchester Police Department and the defendant executed a written waiver of his *Miranda* warnings. The defendant advised the court that he voluntarily executed the forms and that his responses were truthful. A factual dispute again arises at the West Manchester Police Department wherein the

defendant contends he inquired about his attorney and indeed thought Haugh was his attorney. Again we resolve this factual dispute against the defendant and find that the defendant's actions, the signed waiver, and his acknowledged lack of consultation with Haugh refutes his position. Finally, it is undisputed that again on December 8, 1992 (the date the defendant was arrested on the second set of charges), the defendant was advised of his *Miranda* warnings and executed certain medical releases.

As a result of the foregoing, we conclude that the defendant did knowingly and voluntarily waive his right to the assistance of counsel and his right to remain silent during his custodial interrogations. The defendant was properly warned of these rights by interrogating officers prior to any interrogation. We further conclude the statements given to the police at the York City Police Station, the York County Prison, the West Manchester Police Station, and en route to the York City Police Station on November 19, 1992, November 24, 1992, and December 8, 1992, respectively, were made after the defendant was warned of his *Miranda* rights and were freely and voluntarily given.

Additionally, at issue is a statement given by the defendant after a phone call made by the defendant from the York County Jail to Bev Mackereth of the district attorney's office. Ms. Mackereth advises that on December 15, 1992, the defendant telephoned the district attorney's office and asked to talk with her. The defendant contends this call was initiated at the suggestion of his pastor's daughter who advised him at the prison that Ms. Mackereth wished to speak to him. The parties did not immediately speak with one another but Ms. Mackereth returned the defendant's call. At the outset of the conversation, Ms.

Mackereth, who is not a law enforcement officer but rather the victim's coordinator of the child abuse section of the district attorney's staff, advised the defendant that there was no need for him to discuss the pending charges in that she was aware of what happened through discussions with the children. No *Miranda* warnings were given by Ms. Mackereth. Thereafter a discussion ensued regarding the charges and the defendant's actions. We conclude that statements given by the defendant via telephone to Ms. Mackereth under the circumstances described did not necessitate the extension of *Miranda* warnings albeit the defendant was in custody in the York County Prison. Clearly, the defendant was under no compelling obligation to telephone Ms. Mackereth and he was free to hang up the telephone at any time. He had initiated or originated the initial call notwithstanding his contention that he did so at his pastor's daughter's insistence. He had been advised of his constitutional rights no less than six times over a three-week period by a variety of law enforcement officers. His educational background belies his ability to understand the criminal justice processes. Accordingly, we find by a preponderance of the facts that his statement was voluntary.

Finally, the court has been asked to require the submission of the victims to additional gynecological testing to ascertain whether the victims have contracted a sexually transmitted disease which the defendant contends he has. Defendant further seeks to secure a second opinion as to the nature of the source of any vaginal scarring of one of the victims. We have been apprised of the nature of the testimony through examining physicians at the York Hospital and are apprised that no sexually transmitted diseases have been diagnosed. We further are advised

that the observed scarring is less than clear as to its source. Given the circumstances described and the passage of time over which these offenses were alleged to have occurred, we are not persuaded that defendant's request is appropriate. Thereby, the medical examination of the alleged victims is denied.

We, in addition, deny defendant's request to have a psychiatric evaluation of his wife—the alleged victims' mother. Clearly the argument advanced by the defendant does not warrant granting this extraordinary request. It is unclear to the court, based upon the defendant's testimony, that any information gained from such an examination would prove to be relevant and admissible.

Finally, we deny defendant's request for a change of venue. The court is bound to consider the nature and extent of the publicity; the degree to which the information is attributable to the police or prosecution sources; the community atmosphere; what efforts can be employed to diminish the impact of the publicity; and the length of time between the publicity and the trial. These issues may be appropriately dealt with at the time of voir dire of the prospective jurors, particularly since the record before this court does not reflect such far reaching pre-trial publicity which would inherently impact upon a fair trial.

Accordingly, an appropriate order shall be entered.

## ORDER

And now, to wit, June 11, 1993, it is hereby ordered and directed:

(1) The Commonwealth's motion seeking disclosure of confidential HIV records is denied without prejudice.

(2) The defendant's motion to suppress the statements given to police officers and Bev Mackereth is denied.

(3) Defendant's motion to compel gynecological examination of his daughter and stepdaughter is denied.

(4) Defendant's motion to compel psychological examination of his wife is denied.

(5) Defendant's motion for change of venue is denied without prejudice.